UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MICHAEL HORNER**,                                    Case No. 6:12-CV-01938-KI

        Plaintiff,                                    OPINION AND ORDER

   v.

**COMMISSIONER, Social Security Administration**,

        Defendant.

   Bruce W. Brewer
   PO Box 421
   West Linn, OR 97068

        Attorney for Plaintiff

   S. Amanda Marshall
   United States Attorney
   District of Oregon
   Adrian L. Brown
   Assistant United States Attorney
   1000 SW Third Ave., Suite 600
   Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Nancy A. Mishalanie
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Michael A. Horner brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Horner filed an application for DIB on April 27, 2009 alleging disability (after amendment) beginning December 31, 2007. The application was denied initially and upon reconsideration. After a timely request for a hearing, Horner, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on May 2, 2011.

On September 22, 2011, the ALJ issued a decision finding Horner was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on August 29, 2012.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ concluded Horner has the severe impairments of: arteriosclerotic cardiovascular disease status post four vessel bypass; cognitive disorder, NOS; and reading and writing disorders.  None of these impairments, either singly or in combination, met or medically equaled the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ found Horner had the residual functional capacity ("RFC") to perform medium work, defined to mean lifting and carrying limitations of 50 pounds occasionally and 25 pounds frequently, standing and walking about six hours in an eight-hour workday and sitting six hours in an eight-hour workday.  Horner must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery due to occasional vertigo.  He could not perform jobs requiring more than basic reading and writing skills.  Someone with this RFC, according to the vocational expert ("VE"), could not perform Horner's past work, but could perform bench assembly work, or work as a packing line or bottling line attendant.  Accordingly, the ALJ found Horner not disabled.

## FACTS

Horner graduated from high school and worked as a logger for 17 years, then worked in mills, and did farm work and roofing.  He was later self-employed in constructing small sheds and pole barns, and in performing mechanical work and welding, until he suffered a heart attack and was admitted to the hospital on March 25, 2009.  He was diagnosed with severe 3-vessel obstructive coronary disease and Dr. Mark Taylor, at Good Samaritan Regional Medical Center,

Page 5 - OPINION AND ORDER

recommended coronary artery bypass surgery. Horner had surgery on March 26 and was discharged on March 30.

Horner followed up with a nurse practitioner on April 22 and reported doing "very well." Tr. 247. He denied any chest pain or angina. The nurse practitioner gave him weight limits: 5-10 pounds in the first 8 weeks, 25 pounds by the third month, and then slow lifting from 50 to 100 pounds. He denied rehabilitation as he reported staying "quite busy on his farm." Tr. 249. Due to a lack of insurance, he sought no follow-up care.

On June 17, 2010, Horner sought confirmation from William Ferguson, M.D., that he could perform work grinding stumps and mowing blackberries for his own business. Dr. Ferguson confirmed Horner's arteriosclerotic cardiovascular disease status post bypass, with some evidence of mild congestive failure, but with clear lungs. He undertook a physical capacity examination of Horner, who demonstrated he could sit and stand comfortably but did rate poor in his cardiovascular endurance.

Susan Bottomley performed a physical capacity evaluation of Horner on July 12, 2011, but reported she was unable to identify whether his capacity was "correlate[d] with his coronary disease" as her expertise was in orthopedic conditions. Tr. 335.

Horner alleges disability beginning on December 31, 2007, to be consistent with the last time Horner engaged in substantial gainful activity, when he was 49 years old.

## DISCUSSION

Horner's only challenge is to the ALJ's credibility finding. Horner testified that he believes he is dyslexic, although he was never formally diagnosed and he was able to graduate from high school. He also testified that after the heart surgery he found he tired easily, that he

Page 6 - OPINION AND ORDER

could work for only one or two hours a day for 15 minutes at a time, and that he got dizzy and felt disoriented during the day. He used a cane at home, although one was not prescribed, because he thought it was a good idea. He wanted to work, but felt he could not perform the full-time work he wanted to do which was mowing blackberries.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Horner's condition could reasonably be expected to cause the symptoms Horner described, but concluded Horner's statements "concerning the intensity, persistence and limiting effects" were not fully credible. Tr. 29. The ALJ gave specific, clear and convincing

Page 7 - OPINION AND ORDER

reasons for his conclusion. For example, the ALJ commented Horner's complaints of dyslexia were belied by his ability to graduate from high school, and by Horner's own written function report in which he conceded he could follow written and verbal instructions well. In any event, the ALJ accommodated Horner's reading limitation in the RFC.

The ALJ also relied on medical reports indicating Horner should be able to lift 50 to 100 pounds by four months after surgery. Further, after the hearing, the ALJ sent Horner to a cardiovascular consultation to determine whether Horner experienced any exertional limitations. Kevin Thompson, D.O., determined Horner has normal functional aerobic capacity. Dr. Thompson believed Horner has "a class-2 NYHA heart failure classification without any significant limitations," and found Horner could work in the medium range (lifting and carrying 100 pounds occasionally and 20 pounds frequently). Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Here, where the treating and examining providers believed Horner could perform work at the medium range, the ALJ could appropriately rely on those opinions in finding Horner not entirely reliable about his limitations.

Finally, Horner described daily activities of cleaning up his shop, sometimes building beehives, and splitting wood, along with taking medications, making meals and resting. He informed one examiner, in July 2011, that he could walk for an hour or two without needing to stop, and that he was on his feet about three hours a day running a table saw. Further, contrary to a written report in which Horner complained of "constant chest pain," Horner did not report constant chest pain to the agency in a phone contact nor did he seek treatment for his symptoms.

Page 8 - OPINION AND ORDER

Compare Tr. 155 and Tr. 175; Tr. 330 (describing occasional chest pain). He also complained in that report of back and neck aches, but Horner never sought treatment for these alleged impairments. Although Horner disputes that his daily activities are indicative of his ability to work, daily activities may be used in the credibility analysis if they are inconsistent with the claimant's reports of inability to work. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009); Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

In any event, as the ALJ noted, relying on the VE's testimony, the ALJ's decision would be no different even accepting Horner's description of his limitations and restricting him to light work. See Tr. 32 (describing VE's testimony that the jobs identified could be performed with a restriction to light work).

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___3rd___ day of March, 2014.

          /s/ Garr M. King
          Garr M. King
          United States District Judge